We'll hear argument first this morning in case 2223, Pugin v. Garland and the consolidated case. Mr. Gannon? Mr. Chief Justice, and may it please the Court, in 1996, Congress made an offense relating to obstruction of justice, an aggravated felony for purposes of the Immigration and Nationality Act. At the time it did so, the phrase obstruction of justice was understood to include crimes that occurred when a proceeding or investigation was not currently pending. The wheels of justice can be obstructed even before they begin to move. Indeed, one of the best ways to obstruct an investigation or proceeding is to ensure that it never starts in the first place. My friends on the other side say that only 14 states plus D.C. even punished obstruction of justice in 1996, and that Congress meant to limit obstruction of justice to a catch-all offense in the Federal Criminal Code that includes a pending proceeding requirement. But by 1996, Congress had added other obstruction of justice offenses without any such limitation, and it had expressly disavowed such a limit in 1982 when creating the principal federal witness and evidence tampering statute, 18 U.S.C. 1512. Also by 1996, case law, dictionaries, leading commentators, and the model penal code had all recognized that the kinds of offenses at issue in these two cases, accessory after the fact and witness tampering, involved obstruction of justice even when the elements of the offense did not require there to be a pending investigation or proceeding at the time of the offense conduct. This Court should hold the Ninth Circuit heard in concluding otherwise. I welcome the Court's questions. Mr. Gannon, could you give us a straightforward definition of obstruction of justice? We agree with the definitions on page 23 of our brief from legal dictionaries that obstruction of justice involves willfully interfering with the process of justice, and the Board here said that the offenses at issue are the category that have an affirmative act that includes a specific intent to interfere with the process of justice and law. So you give a wide range of evidence. You talk about Blackstone as well as Chapter 73. Do you think all of the crimes listed there are obstruction of justice they have the specific intent to interfere with an investigation? Now, we don't think that the investigation has to have already come into existence. It can be a future investigation. In a retaliation case, it can be a past investigation. But we think that it does, in most circumstances, going to require there to be a nexus. In all circumstances, there'll need to be a nexus to a particular investigation or proceeding that could come about, but that comes through the specific intent to interfere with the process of justice and law. It doesn't need to already be in existence at the time the conduct occurs. Counsel, one thing that troubles me about both sides' position is the relating to language. It seems to me that to the extent you have a broad definition of obstruction of justice, it becomes even broader when you say relating to. And of course, it takes adequate account of that. So I understand the formulation in your brief. Could you flesh out a little bit more about how relating to works, particularly against your fairly broad definition of obstruction? Well, I think ultimately we agree that relating to does broaden beyond just what would be core obstruction of justice. But the board here has recognized that the offenses that we're talking about are those that have the specific intent to interfere with proceedings of law and justice. And so that we think is ultimately the limiter here. Even though it would need to relate to obstruction of justice, we think to the extent that there is a specific intent to interfere, that's a sufficiently close nexus that you don't need to be concerned about sweeping in a lot of other offenses. And the board in 1999 drew the line between accessory after the fact and misprision of felony in the federal criminal code, between sections three and section four. It said accessory after the fact, a crime that looks almost exactly like Mr. Pugin's crime here. Well, but I mean, if you were dealing with the criminal statute here, and if you didn't have the board's construction, what would your answer be? My answer would be that obstruction of justice in the dictionary definitions still requires willfully interfering with the process of justice and law. I think relating to does get us a little bit beyond that at the margins. I'm not exactly sure what those offenses are going to be. It does need to be categorical. And so we think that in this context, though, the board looking for that specific intent should give the court reassurance that we're not sweeping in a lot of other offenses. And to the extent that the other side is concerned about, and some of the amici are concerned about defining offense conduct broadly, this case isn't about what actually violates any of the underlying offenses. We take those as given. The question is just whether as a category, as a family of offenses, obstruction of justice offenses need to have a pending proceeding. And we think the answer to that is clearly not. When you say that there needs to be some sort of nexus to a proceeding or an investigation, are you suggesting that there needs to be a kind of reasonable foreseeability in the way that I think that the board has indicated previously? Well, we think we acknowledge that that effectively comes in, but it does throw as part of the specific intent inquiry. It can't be a standalone element. If it were a standalone element, then essentially no state statute would come in because no state statute echoes the Arthur Anderson opinion that this court issued in 2005. I think it's true 1512. Mr. Gannon, let me start with what other aggravated felony is defined merely by the state statute. Tell me what other identified aggravated felony do we approach that way? Well, you approach the sexual abuse of a minor offense in Esquivel-Quintana that way. You used other sources, and we too are using the same sources that you used in Esquivel-Quintana. We were just defining in that case, we were using the categorical approach and looking at common law elements and figuring out what they meant. Now, assuming that I think the other side has a point that we have to find what the definition is of obstruction of justice or relating to obstruction of justice. All I can find is that in 1831, a leading commentator, Blackstone and Kent, understood it to require a pending petition. In 1893, the court in Pettibone held that obstruction of justice requires a pending petition. Congress reenacted the offense in 1948, explaining that it made no substantive change to the petition at the time of Pettibone. Then in 1995, just one year before obstruction of justice was added to the INA list of aggravated felonies, the court in Aguilar again required interference with the pending proceeding. Now, you say some states in 1996 had expanded the definition of obstruction of justice, not to need a pending proceeding, but the majority of them still defined it that way. I look at how Congress used it and in all of the federal criminal code, the phrase relating to obstruction of justice appears in just one other place, RICO section 1961. And it specifically refers to 1503. That same provision refers to section 1512 as relating to tampering with the witness. So Congress itself is now saying we think of obstruction of justice as something different than the other provisions. And if we read things the way you're saying, there's a lot that's superfluous in this statute. Why would Congress have made it necessary to point to perjury or to false statements or to other provisions that it did? I'm a little bit confused. I would think that we would go to what the common law understanding was at the time in 1996. And in 1996, every use of relating to obstruction of justice required a pending proceeding. Justice Sotomayor, we do not disagree that 1503 is an obstruction of justice offense. We disagree about the idea that that's the only obstruction of justice offense in federal criminal law. No, you're missing the point. The point is, what are the elements of an obstruction of justice? And if it required a pending proceeding, how do we read it out? Because we think that you have to look at more offenses than 1503 in order to determine. But when Congress did that, when it referred to 1512, it said relating to tampering with the witness, not relating to the obstruction of justice as it did in RICO. RICO is the only place where it does that in the two parallel cross-references that you're talking about. Why bother with all the other definitions? Perjury, all the other crimes, they all relate to obstruction of justice according to you, with or without a proceeding. I think the aggravated felony definition is replete with potential overlap. Congress clearly wanted this definition to be broad. It returned to it several times in the 1990s in order to make it broader, in order to reduce the punishment thresholds. It reduced the punishment threshold here from five years to one year. And there are other things that clearly overlap in the aggravated felony definition. There are many states that make it a crime not to report a crime, even if the person hasn't aided or abetted or participated in any way in the crime or helped the criminal. Is that an obstruction of justice offense? Only if it has the specific intent requirement to interfere with an investigation. But it seems to me you're reading that intent in into everything. So is the BIA. You're saying that just because an investigation might follow, you're responsible. We read that intent requirement by looking at the dictionary definitions, the commentators, the model penal code, lots of other things that had happened in the law after Blackstone in 1831. Counsel, why don't you finish your answer to Justice Sotomayor and then I have. We take Pettibone and this court's decision in Aguilar in 1995 as saying that 1503 did have the pending proceeding requirement. But we think it's clear that Congress considered a larger range of offenses, including those that are in Chapter 73 as also being obstruction of justice offenses. And indeed, Section 3, the accessory after the fact provision, which federal courts of appeals since the late 1960s and early 1970s had repeatedly characterized as saying the gist of an accessory after the fact defense under Section 3 is obstruction of justice. We think that is part of the context against which Congress enacted this definition in 1996. Counsel, looking at your reasonable foreseeability point, exactly at what point do you decide? Let's say there's a 50 percent chance based on historical evidence that the government would a particular crime, would investigate it to the point of prosecution. Is that enough to say that the investigation is reasonably foreseeable? Well, I'm not exactly sure how this court would apply the Arthur Anderson test or how courts of appeals have applied that in cases about when that needs to be an element of the offense. We think here that it's not a strict element of the offense, but it does come in through the mens rea. So we think that if the investigation is really unthinkable, it's the sort of thing that nobody's going to get investigated or prosecuted for that there's not going to be. I understand the easy case and the hard case. I'm trying to figure out exactly where you would draw the line. I mean, I think here the main place we're going to draw the line is about whether you have a specific intent to interfere with the process of justice. And so if it's the type of offense that nobody is going to be prosecuted or investigated for, that prosecution isn't going to get brought, they aren't going to get convicted. We're not going to have a conviction for accessory after the fact, which had in Virginia, for instance, the mens rea of intending to influence and intending to enable the felon to elude punishment. If you're intending to enable him to elude punishment for something that he was never going to come after for, then it's going to be very difficult for the prosecution to prove that. So putting aside the question of how exactly you draw the line, when you say that you don't want it to be an element of the offense, and it's supposed to only come through the mens rea requirement, why are you arguing that? And what's the effect of that? I mean, the practical effect and the why that we're arguing it is that there are essentially no statutes, not even the Arthur Anderson to require there to be a reasonably foreseeable investigation. We don't deny that that's part of 1512, since the court construed the statute in 2005. But all of these state obstruction of justice offenses, accessory after the fact, a lot of these other crimes, they weren't drafted in a post-Arthur Anderson age. Yeah, but it does seem that Arthur Anderson and then Marinello, where it says, is it in the off thing? It does. You know, would suggest that when we think of prototypical cases of obstruction, we're thinking of cases in which there is a proceeding, or at least an investigation, as Marinello said, in the offing. Yes, there needs to be a particular in Marinello tax proceeding that is in the offing. It's not just day to day work of the IRS agents there. But I would stress that Marinello relied on the phrase do administration of this title as echoing 1503. And that's that's language from the statute that was construed in Patubo and Aguilar as needing a pending proceeding requirement. And even though the title 26 provision had that similar language that is not in the INA, the court still didn't require there to be an already pending investigation of the IRS in order for the title 26 provision to apply. It said in the offing was good enough. And so here we think that an intent to interfere with something that really is conceivable, essentially gets at the same point. This distinction matters. Doesn't it only in the case where the person who specifically intends to obstruct a future investigation is unreasonable in thinking that there will be a future investigation, right? That's the only instance in which it would, it makes a difference whether this is a standalone element or whether it's subsumed by the intent requirement. That's right, that that's the only cases in which it's going to make a difference. But if you say that it needs to be an element, then it would be harder for us to satisfy in a lot of cases where I think we would say the intent is going to sweep that in virtually all the time. I understand that. Let me ask you a question about Patubo. Do you interpret that as a decision that interpreted a specific statutory provision and the language of that specific statutory provision? Or was the court saying that obstruction of justice like burglary or murder is a common law offense and it has well-recognized elements and so we are going to read this statute in accordance with a common law offense? We think it's clearly the former. In Pettibone and in Aguilar and again in Marinello, the court recognized that the phrases that mattered in 1503 were the reference to the administration of justice and in any court. And so that's language that Congress included in the catch-all clause in 1503 that was construed originally in Pettibone in the 1890s was carried through into the 1995 decision that Justice Sotomayor mentioned, but that's still only the 1503 statute. And we think it's quite clear that when Congress added 1512 in 1982, it also considered 1512 to be an obstruction of justice offense. Let me ask you a question about the link between the two. Does it have to be linked to a particular proceeding? Because at the time when a proceeding, an investigation might be in the offing. I mean, I think some of our prior cases have required that link to be between a particular investigation. So you could threaten a witness and say don't report this to the authorities. But that could be state authorities, it could be federal authorities, there could be overlapping jurisdictional authority. So do you think it has to be close enough to an investigation for the defendant to suspect that state authorities might bring a particular investigation as opposed to the feds? I think it wouldn't matter which type of offense it would be if you were specifically trying to prevent a witness from going to either state or federal authorities about your criminal conduct, that that is still conceivable. You're still interfering with the wheels of justice, even though you don't know whether they're state or federal at that point. Okay, let me ask you a different question. And this goes back to Justice Sotomayor's point about you using obstruction of justice in a dictionary definition rather than looking at the elements of an offense. For perjury and bribery of a witness, I assume that you would agree under the categorical approach we would be looking to generic definitions of perjury and generic definitions of bribery of a witness? I think you could also look to the federal statutes that criminalize those crimes. You would look to state statutes as well in a case like Esquivel and where the court was looking at sexual abuse of a minor. It recognized that this may be a family of offenses and it said that statutory rape is just one part of the category that's covered by sexual abuse of a minor. Here we think it's clear that it wouldn't necessarily start. I guess what I'm getting at is it seems like there are clusters here. You have obstruction of justice, you have perjury, subordination of perjury, bribery of a witness, and it feels a little bit odd to be for the first one but using kind of a more traditional approach for the others in the statute. We're not running away from the statutes. We think that they support us. Our main contention about the statutes is that 1503 isn't the only obstruction of justice offense at the federal level. What is relating to do? What is an offense relating to bribery of a witness or relating to perjury? We think there it also expands the category a little bit. The Ninth Circuit in the Yim case held that relating to perjury extends a little bit further maybe than the elements of the offense. What do you mean? It held there that a federal perjury provision didn't necessarily... The short answer is yes. We think that relating to adds to both obstruction of justice and the clauses that follow. But why? If obstruction of justice is itself a family, as you say, and I accept that there's not a particular obstruction of justice offense that we call that or that Congress considered to be that, why isn't relating to obstruction of justice just describing the family? What I don't understand is why you have a group or class called obstruction of justice and then you interpret relating to to get you beyond that as opposed to interpreting the entire phrase relating to obstruction of justice to say refer to all of the offenses listed in 73. I don't know why. I guess I'm just confused as to why relating to is adding to the classification that you say exists. I think if you agree with us about the mens rea as being necessary to establish a sufficient connection in order to come in here even when it's relating to, then there isn't going to be any... Setting the mens rea aside, just trying to understand what you believe obstruction of justice in subparagraph S to be referring to. I've heard you say several times that it's a family, a classification. If I accept that and agree with you, then why isn't relating to obstruction of justice just describing that category? That would seem to be to me a way to limit because we don't have to worry about relating to as being beyond the class. And second point, why isn't the class what Congress has listed in chapter 73 and grouped together under the heading obstruction of justice? I don't know why you're going beyond a chapter 73 type offense in your argument. Well, I think that with respect to the first question, I understand your point about relating to. We think that the phrase generally is used by Congress to broaden things. In this particular definition, when it's used in parentheticals, it's just a reference, a cross-reference, but we think generally it would be broader. But even taking your point about a family of offenses that's defined as we think by this common mens rea and various different potential actus reuses. All of which runs through 73, right? Yes, but it's not just limited to chapter 73. Why? We think because we think that other offenses are obstruction of justice. And as I said already. But I'm saying, isn't the question what Congress intended? Absolutely. If Congress says an offense relating to obstruction of justice, and then in chapter 73, they list a number of offenses under the heading obstruction of justice. I guess I don't understand why we are being directed to some sort of a generic categorical approach about a particular offense called obstruction of justice when that's really not a thing. It seems like it's a class. And here's a list of all of the things, some of which require proceeding, some of which don't. Why isn't this the universe of offenses plus the state law analogs to them? Why isn't that what Congress intended obstruction of justice to mean? I agree with everything there except to say that chapter 73 defines the extent of the universe of parallel lines is here. And that's because it was clear by 1996, that accessory after the fact, for instance, the gist of that offense was obstruction of justice. And then where in the dictionary clear to to clear in in most circuit courts of the United of the Federal Circuit courts had said that about section three. And, and many state courts had said that about their obstruction, their accessory after the fact offenses commentators, the Lafave treatise, the model penal code commentary, all of these sources talked about offenses outside of chapter 73 as also being paradigmatic obstruction of justice offenses. And so that's why we think that just looking to chapter 73 isn't enough. We think chapter 73 provides good guidance. There are clearly more than one obstruction of justice offense in chapter 73. And therefore my friend's attempt to limit this to Congress thought that there were obstruction of justice offenses outside chapter 73, including, I would say, that Congress did not put accessory after the fact in chapter 73. So those who believed it was broader, what was the basis? It's the mens rea that runs to those other crimes. It's still the section three still requires the intent to hinder and prevent the prosecution of the felon. I'm sorry, I'm just talking about accessory after the fact. Yes. Is not in the list of crimes that Congress has put together under obstruction of justice in chapter 73. You say it's still covered. And I guess I'm just trying to understand why is it because it has the same mens rea as these offenses? Yes, because it still requires that the act be taken to hinder or prevent the apprehension trial or punishment of the known felon. And that's why everybody considered it to be the gist of that offense was obstruction of justice is what the D.C. Circuit said in 1972 and various commentators did. Thank you, counsel. Justice Thomas, anything further? Justice Alito? The question on which we grant a review is to qualify as an offense require a nexus with a pending or ongoing investigation or proceeding. And you say that that is not required. We might or might not agree with you. But if we do agree with you on that, do we need to go any further and decide whether the offenses in the two cases qualify as obstruction of offenses relating to the obstruction of justice? Well, you would not need to in order to answer the question on which you granted cert. The question that we offered in our petition was broader and would have included that question in the case of Mr. Cordero Garcia. We think we've submitted that the other side in both cases hasn't preserved any other arguments. But we don't think you would need to decide that question if you wanted to remand and let the courts of appeals apply your definition or your answer to the my friends on the other side would be able to raise any other arguments that they happen to have preserved. Thank you. Justice Sotomayor? Justice Kagan? What seems unusual to me, Mr. Gannon, about your argument is that in most cases, when we ask about a generic offense, we're asking about a prototypical offense. We're asking about sort of the core offense. And we realize that there are things that fall outside that core. And when a state statute includes them, it's going to flunk the categorical test. But we are asking about the core. And it seems to me that your answer to this question is really not asking about the core. It's asking, like, what's the outer bounds of the offense? And what is anything that anybody has said is included in the offense? And then we're going to include all that in our definition of what a generic offense is. But I guess I would think that that's pretty inconsistent with how we've taken the generic offense question to go generally. And I don't think it is if you recognize that this is a family of offenses, as Justice Jackson was saying. And I think as the court was was also saying in Esquivel-Quintana, when the court looked at the phrase sexual abuse of a minor, it didn't say, oh, there's one generic sexual abuse of a minor offense. It said one category there is one example of this category of crimes is the phrase the court used with statutory rape laws. And I would say that there are other categorical approach cases where the court has recognized that there's an irreducible minimum that defines this as being part of the category of cases at issue, of offenses at issue. But that doesn't mean that there can't be other things that also apply. So in Nijewan and Kawashima, the court was talking about offenses involving fraud or deceit. And it recognized that fraud can be mail fraud, it can be wire fraud, it can be conspiracy to defraud, it can be lots of other types of fraud. But the actus reus is it can be a bunch of different things. But what it has to include is an intent to defraud. Same with sexual abuse of a minor statutory rape was as an example. Here, we think all of the offenses are going to require the willful interference with the process of justice and law. And but the actus reus can be different. It could be you're threatening a witness, it could be you're destroying a document. Yeah, but take the accessory after the fact, which you want to put in. I mean, you can look at that accessory after the fact, it's just like aiding and abetting, or it's like being a member of a conspiracy or something like that. I mean, nobody truly thinks of that as a core obstruction of justice offense. With respect, Justice Kagan, look at the 1972 decision from the DC Circuit. It said that obstruction of justice is the gist of that offense. And many circuits that we cite in our brief on 22 and 23 repeat that definition. So did commentators. So does the model penal code. Everybody recognized that just even though it's not in Chapter 73. I mean, it's sort of obstruction of justice taking over the world. No, it's doing so. Excuse me, Mr. Gannon. And doing so by means of trying to define a generic offense, which in everything we've ever said about that project, is defining the prototypical crime. And the reason why we think that one is prototypical is because it requires the comfort and assistance given the known felon there to be done in order to hinder or prevent his apprehension trial or punishment. That's what Section 3 at the federal level says. The Virginia statute at issue in Pugin is essentially the same as it's applied under Virginia case law and the model jury instructions that require there to be a specific intent to help escape or delay capture prosecution or punishment. And that is what it means to obstruct justice, we think, if you look at the dictionary definitions and the commentators. Justice Gorsuch? Well, you're not going to like this anymore. Just to follow up on Justice Kagan's thought, I wonder whether we're essentially asked to, between these two choices, I just wonder if you think this is a fair summary of our choices in defining what constitutes categorically obstruction of justice. One option would be to look to the common law and to this court's decisions in Pettibone and Aguilar and say, well, that usually meant, at common law, traditionally, that there was an ongoing proceeding. Obstruction of justice was contempt of court, things like that. The other is to look at dictionaries and say, well, there's some linguistic drift in this concept. And when we speak casually, the gist of any kind of thing that impedes an investigation, failure to report a crime, accessory after the fact, witness tampering, this sounds sort of like obstruction of justice, and they would fall within a contemporary dictionary definition. So that should be the choice we make. Is that a fair summary of our two choices here? Well, I would quibble with both halves briefly to say that with respect to the first part, Pettibone and Aguilar, we're not talking about the common law. They were talking about a specific statute. I understand that. But if we look at the common law, it's consistent with Pettibone and Aguilar. I think we'd find. So I take your quibble. And with respect to the second half, I would say that we're not just resting on dictionaries. We're resting on a lot of other federal and state criminal offenses. We think that 1512 is an obstruction of justice offense. We think Section 3 is an obstruction of justice offense. Let's take 1512. I mean, that may be your best one. And you rely on a lot in your brief. And that has to do with witness tampering, of course. But Congress there specifically said in this instance, you don't need to have a pending proceeding. And I take the point that that in some ways might be seen to might seem to help you. But might it also hurt you in another way, in the sense that their Congress exhibited an understanding that normally obstruction of justice as understood a common law, the soil that came with 1503 requires an ongoing offense, but not in this case, Congress said. So doesn't that kind of, isn't it the exception that proves the rule? We don't think it is because we think that Congress was clearly distinguishing the new provision from 1503. But that doesn't mean that Congress didn't think that 1512 was also an obstruction of justice offense. And indeed, it was understood that it was going to take on a lot of the cases that had previously proceeded under 1503. And then in this linguistic drift concept of obstruction of justices, as from the dictionary definitions is impeding a process of justice, I think is how you use what does that mean? Is that defined in law anywhere? There's not a separate definition of that. But I do think that you can I'm not aware of one. I didn't see one in your I mean, I think that the the ordinary meaning of the phrase impede or interfere is to prevent from being effectuated in its in its full way. And we think that you can impede an investigation by keeping it from getting off the ground. Thank you. Justice Kavanaugh. Just on a follow up on these questions. I think you're saying that the core of this has to be defined by the mens rea, willful interference with the process of law, and that that unites all these disparate crimes. We agree with that. We think that that that's common across the federal and state statutes that we cite and that we think Congress was aware of. And if a crime didn't have that mens rea requirement, it wouldn't work. Yes, I think that the retaliation offenses come in a little bit differently with respect to whether there's a, you know, a pending proceeding and how you're interfering with that. We think that the retaliation against a witness, a juror or a judge, other participants in the trial process, those would also still come in. But because we think that that's an attempt to interfere with the machinery of justice, even though it comes after the conclusion of an individual proceeding. But but yes, I take your point that that we do think that that is what is common. That is our point, that that is what is common across this family of offenses. And then defining it, Justice Gorsuch's question, I thought it was usually examples, shredding documents, killing a witness, killing the judge, paying off a witness, bribing a juror. I mean, there's a family of offenses. I didn't think it was that complicated, but I don't know what you think that the definition of process of law was. We do think that all of those are going to come in. We think that the fact that those are all, you know, different acts demonstrates why this is a family of offenses. And but we but they are still uniting killing the judge during the case is the same as killing the judge after the case. And also, you know, preventing a witness from showing up during the trial is the same as preventing the witness from reporting the crime to the police in the first instance. And indeed, in California, as we point out, they punish the preventing the report of the crime even more harshly than preventing a witness from testifying at trial. Okay. Slightly different tack. Relating to, I think there is ambiguity about what that means, and I wouldn't want it to just stretch forever, like some of my colleagues said, but to the extent there's the ambiguity about whether it's the core 1503 or includes before and after, I would think relating to is a helpful textual indicator there. I agree with that. And I would also agree with Justice Jackson, if you took this as a family of offenses, and this relates to the entire family of offenses that would that would capture the bulk of what we're concerned about here. Okay. And then last question, again, on a different tack, the immigrant in these cases is still eligible. Correct me if I'm wrong for statutory withholding of removal and for convention against torture as well. Is that accurate? I saw that in a footnote. That's in footnotes three on page three of our brief. Accurate footnote. I sure hope so. Okay. Thank you. Justice Barrett. Mr. Gannon, in your interchange with Justice Jackson, she's asking you about Chapter 73. I just wanted to clarify that is a title that was put in by the codifiers, not Congress, correct? To the extent that Congress codified Title 18 as positive law in 1948, then Congress adopted it, but they did so along with a provision that said don't consider where this particular offense is classified when you're construing this offense for purposes of construing Title 18. And so the answer to your question is yes, but it ends up in the same place. You can't put too much weight on that, the fact that it appears under Chapter 73, the title obstruction of justice. I'm just wondering how far you would take that. Are there any offenses in Chapter 73 that you think wouldn't qualify? Or is the fact that they fall under the title obstruction of justice as organized by the codifiers enough? If they don't have the specific intent, then I don't think that they would qualify. The 1520 offense about keeping audit papers may or may not include that specific intent, I'm not sure. The civil actions in 1514 and 1514A aren't criminal offenses, so something can be there without being an obstruction of justice offense. But we think that the fact that Congress put them all together is evidence consistent with a common meaning and a common understanding and what we think the term means without making the title dispositive. Justice Jackson? Yeah, so I think that was helpful because what is your view? Your view is that in order to be in the family of offenses, you have to do what? I'm sorry. You have to take some affirmative act with a specific intent to interfere with the process of justice and law. And conceivably, we can read all of the listed offenses that Congress has grouped together, whether it's the codifiers or not, as giving rise to those elements, correct? I mean, there's nothing in here that you look at and say that's not conceivable, the elements that you have identified. As I just suggested to Justice Barrett, there may be an argument that aspects of 1520 would not come in because that's just a requirement to preserve audit papers. Destruction of corporate audit records in 1520? Yeah, to the extent that that would look more like the offense in Marinello, that might be a limit. But we haven't taken a position on that. But my real point is that we think that Chapter 73 includes lots of illustrative offenses, that some of them have explicitly do not. And that's why we think that the pending proceeding requirement isn't common to the family. Okay. And if I agree with you about that, help me just one more time with aiding and abetting or accessory after the fact. Because what I'm worried about is that it doesn't look anything like any of these insofar as these are all, whether it's a pending proceeding or not, by these I mean the ones in Chapter 73, whether it's a pending proceeding or not, there is a circumstance in which, as you say, the wheels of justice are turning in some way, there's an investigation, there's an actual pending proceeding, there are things that are happening that are the administration of justice, and the actus reus in these various offenses go toward interference with that process. I guess I'm just still a little worried about accessory after the fact. And I would say that even in Chapter 73, those offenses, the wheels don't have to have started turning. It could just be that there's a potential investigation there. And I think that in accessory after the fact, it talks about the intention to that happened during the anticipated proceeding. That's what the investigation of proceeding would be. You are trying to hinder it right there in the element of the offense. And that's why we agree with all those courts that said the gist of that offense is obstruction of justice. Thank you. Thank you, counsel. Ms. Hutton? Mr. Chief Justice, and may it please the Court, in 1996, when Congress chose to put the word offense relating to obstruction of justice into subsection 43S, it was choosing a term of art that meant interference with a pending proceeding. Just one year earlier, this Court had reaffirmed its century-old holding from Pettigrew. Obstruction can only arise when justice is being administered. And it had further explained that any interference must have a close nexus to that pending proceeding. An offense that might or might not affect a proceeding is not obstruction. No persuasive authority supports abandoning this well-settled, well-bounded definition for something looser like a purpose to interfere with the process of justice. And doing so would be contrary to the notice and administrability concerns of the categorical approach itself. It would leave courts, lawyers, and noncitizens to guess whether a predicate offense might at some point interfere with some possible process of justice and thus be an aggravated felony. Mr. Fusion's case demonstrates the overreach of this looser approach. Accessory after the fact is a distinct offense. It's being a party to another person's crime, not an esoteric variant of obstruction. It is not, so to speak, in the family. It is recognized in the common law, in every state, and in the federal criminal code as something different. And so it is too big a leap to decide Congress meant to list it as an aggravated felony when it chose words that are the name of a different crime. That kind of leap is the opposite of the interpretive restraint this Court uses in construing statutes with significant immigration and criminal consequences. The Court should instead stay on solid ground and confirm that an offense relating to obstruction of justice under 43S requires a close nexus to a pending proceeding. I welcome the Court's questions. And what do you mean by pending proceeding? Are you referring, you seem to focus mostly on judicial proceedings. Yes, Your Honor. Our point in explaining the core as the judicial proceedings that are protected by 1503, I think, is not to object to potentially including other official proceedings in that generic definition. It certainly wouldn't matter for Mr. Pugin. There's no proceeding involved in his offense. But what I think it would illustrate is that already words like relating to or an expansive interpretation that might be underscored by using the categorical approach here is already doing some work because including an agency proceeding that might be from 1505, for example, would be consistent with that core. So how would you confine that, though? What about an investigation? I think, again, an investigation is a step further out from the core definition and so should be viewed with some caution. But I don't think we would object necessarily to it being used here. Accessory after the fact doesn't require an investigation. No one makes that contention. And in 1503, grand jury investigations, for example, are included. And so it would be consistent with that core as well to include investigation. I think the problem that we're having is that the government wants to broaden the definition. It's like we're navigating between Scylla and Charybdis and no one is giving us a way to get between the two extremes. And you're saying you would like to restrict it to a pending proceeding. But yet you admit that as you proceedings, you're not giving us a way to navigate how far out do we go from that core proceeding. Your Honor, I think the math that we're tied to here, so to speak, is the proceeding requirement itself. It is the core. It's the object kind of grammatically. What are you protecting? And there's nothing strange about saying once justice has taken its most official form, that's something special to protect in a specific discrete statute. And so we think the proceeding is what can't move. I think my friend thinks the intent is what can't move. If the issue is the beginning, whether that proceeding has begun, the court has in other cases taken a little bit of an envelope around an existing proceeding and said, well, if it's in the offing, for example. I don't understand my friend to be proposing something like that. And that might be hard to administer in the categorical approach. But again, with accessory after the fact, nothing needs to be on the horizon. Your position is not just accessory after the fact. It's anything afterwards, after the proceeding, correct? Your Honor, it wouldn't matter for us. We could certainly accept that. And I think if you were to say punishment relating because of a concluded proceeding, a proceeding that has been pending, here's how it would be consistent, if I may. The pending proceeding, when it is occurring, part of what protects that is knowledge that afterwards a witness is not going to get killed without the law having some negative and deterrent effect towards that. And so you're still protecting the actual functioning process of justice, the wheels, when they are turning, in a way that would be, again, still consistent with the focus on the proceeding. So retaliation after the proceeding is concluded, retaliation crimes, which I think Congress filled that gap in the 40s, there's obstruction of justice or not? Your Honor, I think they could be. They're in 1503, and there has been a proceeding pending. And that's going to have both historically, purpose-wise, and also I think prudentially in terms of is this a standard that would make sense? All of those could include it. So you're not arguing for a temporal nexus alone, then? I think my friend in their briefs gave the name temporal nexus. It is the existence of the proceeding at some point. I think we've used the word extant proceeding. I guess former proceeding would be fine, too. And accessory after the fact, if there was a proceeding? And I guess I'm not understanding the distinction between retaliation and accessory after the fact that you're drawing. Maybe I'm not following. Your Honor, I think, if I may try to clarify, what we would see as being consistent and involving a concluded proceeding would be something like interference related to a proceeding that has been pending. So there has been a process and then a retaliatory offense, like in 1503 where it's captured, is relating to that process. And of course, there's the word relating, so maybe that's some use for it there. Accessory after the fact doesn't require that any authority of any kind ever have known or suspected that the principal's offense took place. If I lend Bob a shovel to go bury the gun he used, I may have some intent to help Bob avoid punishment, but we don't need to know that the sheriff is coming down the street or that the grand jury has issued an indictment. There is no relationship. The wheels are not yet turning. No accessory offense. But the wheels would turn, so going to the temporal point beforehand, the wheels would turn if you didn't take this act with the intent to frustrate the process of justice. So what about that? The most effective form of obstruction of justice is to convince the witness, kill the witness ahead of time, prevent the witness ahead of time, hide the witness. Your Honor, I think that would be a bad act. It would be criminal. It's not obstruction of justice? It is not because what you have there is the wheels might or might not turn. And Aguilar tells us might or might not is not enough. What if it's pretty clear that the wheels are going to start turning pretty soon? Let's say that a new district attorney is elected in the county and the district attorney says, I'm going to crack down on organized crime in this place. And it's known that the detectives in the DA's office are questioning a particular person. And it's also known that a grand jury is going to begin to sit on Monday. So if someone who fears that he or she is going to be indicted by that grand jury approaches this witness on Sunday and says, here's $10,000 and a ticket to a place where there's no extradition treaty beyond that flight and stay there until we let you know or we're going to wipe out your family. So that's not obstruction of justice as you see it. But if the person waits till Tuesday, it's too late. Right? Your Honor, I think that is a harder question. And that might be if there were some kind of foreseeability analysis, maybe where it would work the day before. But I think what that does include, Your Honor's example, is a particularity requirement. And Justice Berry inquired about this earlier. It's in every case, if where there is a foreseeability requirement, there is a particular proceeding that must be done. I thought your argument was that there has to be a pending proceeding. That is our argument. So there's no pending proceeding in this case. The grand jury isn't going to start to sit until Monday. That's right, Your Honor. I think if there were a desire to bridge that gap, A, there are plenty of ways for that to be a criminal act that are not obstruction of justice. B, that would imply a particularity requirement that I think does exist in the law. It certainly does not exist in my friend's standard here. It's something that the BIA failed to apply and the Fourth Circuit in this case. And that is another way that we are in a kind of a... That sounds to me like it. In both sides here. Or C, you could have a broader understanding of what relating to means. It seems to me that if this is all taking place on Sunday in anticipation of what's going to happen on Monday, I would think a very narrow definition, we would say, well, that's certainly relating to that proceeding. But you seem to have a much stricter understanding. I think that's right, Your Honor. And I think there might be a witness tampering kind of charge or an intimidation charge. I'm not sure it would be obstruction of justice, which has a different and more bounded meaning. And I... I guess I... No, maybe it couldn't be obstruction of justice, but it certainly could be relating to obstruction of justice. If it's something, if you wait 10 hours or whatever and do it, it would be obstruction of justice. Your Honor, I think, again, that the word particularity might have some work to do there. And that is absent from my friend's definition. So I think we don't get to this example. But the particularity would say, what is it that you're interfering with? And so it's limiting that method. But that's... I was just going to say, but it seems to me now, I mean, I thought one of the virtues of the administrability of your approach was that it required an extant proceeding, putting aside investigation, which I thought might have been a difference between you and your friend on the same side. But it sounds to me like what you're saying now is that your position is essentially the same as the government's with a tightened mens rea standard. Your Honor, I don't mean to convey that. I think our position is, as you articulated at the first point, I am trying to explain if there was a discomfort with that, ways that would bridge it, that would still be more definite than my friend's approach. So that it could be relating to a proceeding, but relating to narrow the mens rea requirement to a particular proceeding, so that it might capture Justice Alito's example of the Sunday versus the Tuesday. And it would exclude this general idea that any time anyone does something that might or might not lever the possibility of prosecution a little bit is not included. And proceeding, what's your definition of proceeding? Would it include a magistrate to get a search warrant? Is that an investigation or is that a proceeding? It would, it could be either. I think under the state law for the categorical approach would probably define that. I don't think we would oppose the inclusion of either in a generic offense. Neither is anywhere close to what's required for accessory after the fact. Thank you. Well, I thought the mens rea that Mr. Gannon articulated was designed to solve the problem that you're identifying. In other words, to be convicted of the state offense, the prosecutors in the state offense are going to have to show you specifically intended to interfere with the process of law, a proceeding. So it'll be focused in that way and the mens rea does what you're asking. Your Honor, I don't think that's quite right. An accessory after the fact is the example there where the prosecutor doesn't have to show that you intended anything towards a proceeding. It just says you've done something that has moved the dial in some way. And so you're not affecting justice in any embodied form there. The government hasn't entered the picture. It's not being obstructed or impeded, anything like that. You're just making punishment or law enforcement maybe a little bit easier or more difficult. And so we're still, I think, in quite a gap from accessory after the fact and that definition. Well, if it's something that is preventing the person from being arrested, is that good enough? If there is an ongoing investigation? No, no, there would, no. No, it's not. Counsel, I've struggled a bit with the reasonably foreseeable aspect of this discussion and something that Justice Barrett's question put on. As I looked at 1512, it actually is dealing with this complication. It says, an official proceeding need not be pending or about to be instituted at the time of the offense. And as I thought about it, the problem with your answer to these questions is that you want a pending proceeding and one that's eminently going to start or the witness knows it's going to start doesn't count. Mm-hmm. Assuming I were to disagree with that, that I think that there is a difference between the situation like yours in accessory after the fact where there's nothing pending or about to be pending, how do I articulate that? Give me a version of how to read this in a way that deals with that difference. I think one way might be, and again, our position is not that 1512 would be definitional here. No, no, no, but you understand, I think it captures some of the discomfort that's being addressed. So the way this court captured similar discomfort in Marinello was, again, that reasonably foreseeable particular proceeding in the offing. So that was many different constraints on a general idea that doing something bad with your taxes would interfere with the administration of the tax code. So that would maybe be a kind of standard, but to the BIA, the Fourth Circuit, they did not apply all pieces of that standard. They just said, oh, it's reasonably foreseeable. Someone might guess. That's not what reasonable foreseeability has meant. This court has never accepted that kind of big standard in an obstruction-type case. It shouldn't do so here. Thank you, Counsel. Justice Thomas, Justice Alito. Back to Justice Barrett's questions about what constitutes a proceeding. So you said a search warrant application, that would be a proceeding? Especially if investigations were included, yes. How about if one person is arrested for conspiring to commit an offense and other members of the conspiracy might subsequently be arrested? Would that arrest be a constituted proceeding? It might indicate that there was an investigation into a conspiracy. And since you need more than one conspirator, I think probably that indicates there's an investigation to other conspirators. You've got something definite. And I think that's what we're really searching for, is that starting point, is the machinery on or is it not? Because it can't be on all the time. That's, I think, our basic premise. But you don't think an investigation in and of itself is a proceeding, right? I don't think it's the same as a proceeding. I think it could be kind of colloquially. It is a formal action taken by law enforcement to try to investigate or solve or remedy a crime. And so I think the language in the question presented was investigation or proceeding. That treats them differently. So we're happy to do that as well. So what about states that don't have grand juries? So if they're investigating, that's sufficient? I think that would be fair, especially because if we're saying 1503 is really our heartland here, that's a grand jury. Investigations are included there. If the state doesn't use that, they're still probably doing something perhaps similarly formal even to investigate crimes. That could be included because we want to give some effect to the idea this is a categorical approach case. We're not trying to rule out an effective statute here. If I go back to my earlier hypothetical. So we know the grand jury is sitting on Monday. But maybe that crime is not the one that they're going to take up on Monday. Maybe they're not going to take that up for another week or two. Would that matter? I think you would at least have a particular grand jury proceeding in mind. And if it had not quite started and the court wanted to include that as a generic, which I don't think is the best reading, that would still require particularity. It might require reasonable foreseeability. And I think it would also bring in the nexus requirement, which is separate and we haven't talked much about here today, but the court gave it a lot of effect in Aguilar, where of course there was a proceeding ongoing already, but the actions were not close enough. And so the time effect causation type analysis might also give some work to get us out of this anywhere, anytime, all possible justice standard that my friend proposes and to something that's more coherent and aligned with the historic court. All right. One last question. Suppose that Congress enacts a statute that prohibits threatening a witness with the specific intent to obstruct a future investigation or proceeding. Would that be an offense relating to the obstruction of justice? I think not under 43S, no. Even though it refers specifically to obstruction of justice in the text of the statute, that would not relate to the obstruction, to obstruction of justice? It might kind of colloquially, maybe under the sentencing guidelines, but I think when you're looking at a statute that was written in 1996 and trying to understand what state offenses fit within that based on what Congress understood those words to mean in 1996, this later effected more broad statute might not do that, no. Thank you. Justice Sotomayor? Justice Kagan? Justice Cameron? So on the accessory after the fact, I think your answers have said if the police are already in some way with the proper intent, that that could be covered. Is that right? I think that's right in a kind of conceptual way. I want to be clear, under a categorical approach analysis, the question would be, do the elements of the state crime fit the elements of the generica crime? And so it would just depend what is someone actually being convicted of in that state scenario. I think the accessory after the fact element sometimes wouldn't get into that kind of analysis. So you're really asking what's minimum conduct in accessory after the fact? There is no investigating officer going around in that minimum conduct. It is simply entirely prospective and possible. And meanwhile, though, if there's a dead body, but the police don't know about it yet, so there's no investigation ongoing, but you provide assistance in that same scenario in the same way with the same intent, in that case that's definitely out under your theory, right? Because the police don't know about it yet and haven't started. If that was prosecuted as accessory after the fact where the minimum conduct is much different than that, yes, that would still be out. The other could be in. My memory is fading a little bit. The other being the police have already started. Especially if a state offense, for example, is discussed, you have interfered with an ongoing law enforcement investigation. There could be a state crime that criminalized that. Yes, you have the elements right there when you compare that to a federal offense like we're proposing if clearly in. But of course, we can't lose sight in these hypotheticals that we're looking at the elements of the state offense in most cases and the generic federal offense. Thank you. Justice Barrett? My questions are just to distill exactly what your position is to make sure I understand it. Coming into argument, I thought a distinction between Mr. Pugin and Mr. Cordero-Garcia was that you thought it was just a proceeding, whereas he said it could be an investigation or proceeding. But I hear you doing argument saying you think it could be an investigation or proceeding. Am I understanding that correctly? Yes, Your Honor. Okay. So you've shifted gears slightly? Yes. And if I can just explain briefly, I think our focus was to try to answer the question that the court presented. What is obstruction of justice? It's an interference of the judicial proceeding. And if it is expanded beyond that, and there are some principled ways to do that that we've discussed here, maybe that's giving effect to the categorical approach. Maybe that's relating to that might include these other investigations proceedings. We don't necessarily take issue with that. It doesn't make a difference for Mr. Pugin. And I think it might also be good to look at that in another case where the type of proceeding did matter, but it's not going to be definitional for accessory after the fact either way. So we're not fighting that. So your primary concern would be an Arthur Anderson-type concern of tying the conduct, the obstructive impair or impede conduct to a specific investigation or a specific proceeding that's reasonably foreseeable. I think that's right. So it turns more on mens rea, and this goes back to the question I asked before, it turns more on mens rea than on your definition of obstruction of justice, of proceeding or investigation. So that's what's doing your narrowing work, right? Well, I think that it's both where the intent does need to contemplate something in particular, and that something needs to exist or be in the offing. And again, that's not our primary position, but if we're stepping away from existence, you can't go into the ether. There has to at least be some tie to reality or strong possibility. 50-50 from Aguilar, not enough. Justice Jackson? Do you agree or disagree with the government's view that obstruction of justice is a family or category or classification? It's not our primary position. We think it has a defined common law meaning of protecting those judicial proceedings. Courts have said Chapter 73 is a group that defines this, the Third Circuit, for example. I think the most important thing about that for our purposes is accessory after the fact is nowhere near there. Okay. I want to get to that, but do you accept the Third Circuit, and now I think the government's there is more than one obstruction of justice offense, that it's not a particular thing like burglary. It is a group of offenses. I think our position is different than that. We do think there is a generic meaning. I think the BIA might have gotten close to it in the Espinoza case with the specific intent to interfere with an existing proceeding type analysis, which it then backed away from. But that type of definition, which would work with the categorical approach, would be possible here from that singular interest. I understand, but I guess I also heard you to say that you thought that what we're trying to do here is figure out what Congress intended when it wrote subparagraph S and referred to offenses related to obstruction of justice. So I'm just trying to home in on whether your view is that when Congress said obstruction of justice offense to start and then offenses that were somehow related to that single offense. Yes, Your Honor. We do think it was thinking more singularly from Aguilar just one year before. That's what obstruction of justice is. If it's going to be a family, perhaps Chapter 73 is a way to look at that. And where in the statute? So you say 1503 is the one? I think that's been archetypal obstruction of justice heartland crime for over a century. All right. So if I disagree, and if I'm looking at the entire chapter of 73 with all the various ones that say obstruction or that use obstruct in their language, which is a number of them, why is it that you say that your client doesn't fit any of those offenses? So two reasons. First is that if you look through all of those statutes, there is a strong current of a pending proceeding requirement. So what about 1518? Well, that was passed after 43S. We don't think it's particularly informative. And I don't want to take the position that every single statute there has a pending proceeding requirement. 1512 clearly doesn't. But we think there's that strong trend there. If you're going to define a generic crime using interpretive restraint, which is the approach this Court has adopted, then you need that pending proceeding requirement. But of course, the main point for Mr. Fugin's case, accessory after the fact, isn't there. It's not a match to a Chapter 73 offense. No court that has looked at this problem through that lens has found that it is. And I don't think anyone is saying it's a close match for one of those offenses. Thank you. Thank you, Counsel. Mr. Fleming? Mr. Chief Justice, and may it please the Court. The categorical approach doesn't turn on whether an offense seems like or has the gist or feels like it has the effect of obstructing justice. It turns, Justice Jackson, to your question, on the elements of the generic crime of obstruction of justice as traditionally understood. The government's argument today would sweep in convictions for failure to report a crime or for simply urging someone to deal with a traffic accident informally rather than calling the police. And that is an offense under the California statute at issue in Mr. Cordero Garcia's case. Had Congress meant to treat convictions like that as aggravated felonies, it would not have used the phrase obstruction of justice, which through longstanding usage has required interference with a pending investigation or proceeding. That's because it's only then that the defendant is intentionally interfering with a legal process. Now, the generic definition that we propose still captures numerous convictions like corruptly influencing jurors, threatening prosecutors, or lying to investigating officers, and broader offenses like California's that do not require a pending investigation may still be deportable, but they are not aggravated felony obstruction of justice. I want to make sure that I get to relating to and that I try to help the Court between Silla and Charybdis, but at this point I welcome the Court's questions. What exactly is the generic crime of obstruction of justice? Our proposed definition, Justice Thomas, is the BIA's definition simply requiring a pending investigation or proceeding. So specifically, an affirmative and intentional attempt motivated by specific intent to interfere with an investigation or proceeding that is ongoing or pending. So where do you get that? Well, we get it from the BIA, we get it from the ordinary meaning, and we get it from state and federal crimes of obstruction of justice. So when you talk about the states and you went through them in your brief, which of the state laws should we choose as a comparator? And in your analysis, what was the basis of your choices? So we look at the state, so at the first step of the categorical approach, which is the statutory interpretation step, we look to how states have defined the crime of obstruction of justice. And this is why we think the government engages in the wrong exercise, because it looks at state codes that use different labels, like offenses against public administration or governmental administration. That tells us nothing about what Congress meant when it said obstruction of justice. There are 15 states that in 1996 defined crimes of obstruction of justice, and more than half required a pending proceeding. We counted eight, and then the government rightly pointed out in their reply in footnote eight that we undercounted because we have the right to claim Virginia. So there are nine out of 15 that do require a pending proceeding. Two are ambiguous. One requires a reasonably foreseeable proceeding. Only three of 15 support the government's position. I do want to address the response that Mr. Gannon previewed in his opening, which is, well, it can't be that only 15 jurisdictions criminalize obstruction of justice. The point is when states criminalize this kind of behavior, sometimes they use different names for their categorical approach. That's not relevant to the statutory interpretation exercise. We're looking at what Congress defined the generic obstruction of justice offense to be in 1996. However, at the second step, when the time comes to compare state convictions to the federal generic, there are plenty of other offenses that are going to qualify as generic obstruction of justice. We cite some of them in footnote 18 of our brief. California Penal Code 95, corrupt influencing of a juror. 609, jury tampering. New York Penal Law 21513. I can go on. There are many of them that are going to qualify. But when you are trying to determine what the elements of the federal generic crime of obstruction of justice... Many before and after the proceeding. Many of those crimes, although not with the label, are before or after the proceeding, correct? Some of the with Ms. Hutton. First of all, it doesn't affect the outcome in either of these cases. So if the court were to include retaliation after the proceeding is concluded, that would still require... The temporal points law said on the before point, I guess I'm not sure why Congress in 1996 wouldn't have been looking at the body of federal law of obstruction crimes, and those included a variety of crimes where the proceeding did not yet have to be pending. And to your point about the generic offense, I don't understand why, therefore, to follow up on Justice Thomas, it's not defined as acts taken with the willful intent to obstruct the legal process. Well, so to take the federal Chapter 73 first, the overwhelming majority of provisions in Chapter 73 in 1996 did require a right that Congress specifically in 45 and 67 broadened past the core that had been in 1893 of just having a pending proceeding. And they did it in both directions, the retaliation afterwards and some of the offenses that could be considered obstruction beforehand. Do you agree with that history? Well, certainly, Your Honor. And I'm not here to... I apologize. So if we have that history, Congress itself, you've been relying on your friend on the other side, on this side have been relying on, well, there's this core from back in the 1800s. Congress had changed that quite dramatically by the time 1996 came around, correct? Our position on that, Justice Kavanaugh, is that those are non-generic offenses, just like how in Taylor, this court recognized that there were states that had defined burglary more broadly than the generic breaking into a... Okay, and that gets us to whether we should define the generic offense, willful interference with the process of law or willful interference with a pending proceeding, right? We would say investigation or proceeding. Investigation or proceeding. And on why shouldn't it be willful interference with the process of law if the federal statutes, if the model penal code, if the state statutes, some, had developed in the way that they developed, perhaps most relevant being the federal statutes? Well, let me start. And the model penal code did not have an obstruction of justice. They didn't have an offense called obstruction of justice, right? They have witness tampering, they have tampering with physical evidence. None of that tells you what Congress meant when it used the specific generic offense phrase, obstruction of justice. The states, the vast majority that did use that phrase did require a pending proceeding. The government's pointed to only three of them that didn't. Now, when we get to chapter 73, again, you have a situation where... ...obstruction of justice offenses, they're using a more specific name within the family of obstruction of justice, like the Sentencing Commission describes all these, chapter 73 describes all these. You agree witness tampering is a form of obstruction of justice, don't you? Well, it depends on the elements. If there's a pending proceeding or investigation, then it will be generic obstruction of justice. Congress is free and this court can use the phrase in other ways, but those are non-generic usages of the term, just like breaking into a It has the gist of burglary, it sounds like burglary, but it isn't generic burglary, as this court has consistently recognized it. Unlawful sexual intercourse with someone who's 17 years old sounds like sexual abuse of a minor. Some states call that sexual abuse of a minor, but it's not generic sexual abuse of a minor, as this court expressly said in Esquivel-Quintana. So that's how I would account for the minority of offenses within chapter 73, where Congress in 1512 expressly said, we are not requiring a pending investigation or a pending proceeding here, precisely because the generic form of the offense did require it. When they wanted to create offenses that were not generic, they said so, or they created a specialized idiosyncratic provision to address, for instance, health care offenses in 1518. Those are crimes, it's perfectly fine to call them crimes, it's perfectly fine to even call them obstruction of justice, but they're not generic obstruction of justice, any more than breaking into a car or a boat is generic burglary. I would like to talk about relating to, because- Well, before you get to that, there's a difference between burglary and obstruction of justice. Burglary was what was involved in Taylor, which gave rise to this categorical approach. It's a common law offense, and the elements of that common law offense were well known. That was the basis for saying that these are the elements of generic burglary. Obstruction of justice is not the same. It wasn't a common law offense. It is a concept that developed over the years. Isn't that true? Blackstone does talk about impediments to justice and summarizes what offenses he believes qualify, and they are all- A variety of offenses, a variety of offenses. Which share the element of interference in impeding a court proceeding, and that's what the Black's Law Dictionary in 1996 required. I'll note, sexual abuse of a minor wasn't a common law offense either by that name, but this court had no problem applying the categorical approach and coming up with a generic definition of that offense. There are many authorities going back to the 19th century that describe witness tampering as obstruction of justice without drawing a distinction between tampering with a witness in a proceeding that's pending or in a future proceeding. Isn't that true? I'm having trouble bringing one to mind. Blackstone certainly- Well, it's described as an obstruction of justice over and over again, and when it's so described, those authorities don't say, but only if there's a pending proceeding. I think when Blackstone talks about a witness giving evidence, he's talking about giving evidence in court. Calling up a police officer and saying, I think I just saw a crime being committed is not giving evidence. I don't know of a 19th century authority that said that was the offense of obstruction of justice, but I might be misremembering. How important is pettibone to your argument? I think pettibone is important because 1503 is the generic, general, very broad obstruction of justice offense. To the extent the court is looking to federal practice and usage of that fact that Congress legislated on the background of pettibone indicates that it understood obstruction of justice the way the majority of states that have an obstruction of justice offense understand it, which is to require a pending investigation or proceeding. Wasn't pettibone the interpretation of a particular statutory provision with a particular language? Yes, of course it was, Your Honor. That is the generic, general, federal obstruction of justice statute at the time. It was carried forward into 1503, which the court interpreted and carried forward the interpretation of it from pettibone. You've acknowledged, I think, that things like witness tampering in response to Justice Alito come within the umbrella of what we think about as obstruction of justice as a concept, right? I mean, I suppose in a very loose sense, sure, but we are not engaged in identifying loose senses. Well, maybe we are when Congress, when they put this in, obstruction of justice in 1996, doesn't just put in obstruction of justice, but puts in relating to. And maybe it's because, if we assume they're thinking this through, they recognize that obstruction of justice as a single term may be different because it includes witness tampering, document destruction, lots of offenses, murder of a witness, intimidation of a judge, that are going to not necessarily be labeled obstruction of justice. So Congress puts in relating to obstruction of justice. And I know you were going to turn to that, but I'd be interested in your answer of why that doesn't solve the problem. I'd be delighted to answer, Justice Kavanaugh. So I think that is exactly how Congress used it. Now recall, relating to is used 24 times in the aggravated felony provision. It is, 20 out of 24, it's definitional purely. It's just that it's followed by a cross reference to a particular federal statute. In the other situations in which it's used, it is used in exactly the way Your Honor described, which is to say, look, these may not be called bribery. It may not be called perjury. It may be called obstruction of justice. So we want to make sure you don't get hung up on the title of the offense. But that doesn't change the elements of the generic offense of obstruction of justice any more than it does for bribery or perjury. So we don't think it has an expansive effect. I'm sorry Your Honor. I'm sorry, I shouldn't. But you just said we shouldn't get hung up on the title of the offense. But when you're going through all the state offenses, I think you were telling me to be hung up on the title of the offense. No, when you're interpreting obstruction of justice. Obstruction of justice is a generic offense. It has elements, just like perjury, just like bribery. Now, we think all relating to is doing, is directing you to the fact that once you're at the second stage of the categorical approach and you're comparing a state conviction to the elements of obstruction of justice, don't get hung up on the fact that it's not called obstruction of justice. It might be called tampering with a juror. That's fine. If the court disagrees with me on that, I do think there could be some expansive work that relating to would do, but it does not get the government as far as they want to get. I think, for instance, it could have to, it could expand. There are a lot of states, for instance, that criminalize a bribe, a bribe receiving by a witness or a juror. So not just the witness, but the witness, if the witness solicits a bribe and says, I'll change my testimony if you give me $1,000, that is a criminal offense on the part of the witness or on the part of the juror. New York Penal Law 215.05, Nevada 199.250, there are lots of others. That could relate to obstruction because it's not itself obstruction. The witness doesn't have to change the testimony in order to be guilty of that offense, and they don't need specific intent necessarily to obstruct the proceeding. They just want the money. That might be relating to obstruction. Solicitation of obstruction of justice. I really wish you'd lied to the grand jury in their investigation for me. Subsection U of the aggravated felony provision includes attempt and conspiracy, but it doesn't mention solicitation, so that might be an option, and the retaliation offenses that we've mentioned. I think the government has a common sense point they start with, which you can deal with, which is the best way to obstruct an investigation is to make sure it never gets started by interfering with a witness or destroying documents or what have you. And I think you've acknowledged some of the titles of offenses that might not be called obstruction would get at that kind of offense even before proceeding is started. Certainly some of the federal offenses would and state offenses as well. So why doesn't that help us the difficulty with this is that before any kind of investigation or proceeding has started, we're at a different moment where the defendant does not know that there's any proceeding that's necessary going to begin. Hasn't made the determination that they want to throw sand in the gears of something that's actually going forward. No, no, no. No, I'm done. Call me off. I apologize. Just trying to be helpful here. This is Thomas. There may be reason to be concerned about the breadth of this concept in the Immigration and Naturalization Act, but a lot of the problems are not going to be solved. If there are problems, they're not going to be solved by adopting your limitation. Take perjury, for example. There's going to be a pending proceeding, right? Not invariably. You can perjure yourself by signing a document under the pains and penalties of perjury. There might not be a proceeding then. But I think our position does solve all the workability problems that I believe Your Honor is adverting to with the government's interpretation because it's easy to tell when an investigation or a proceeding are pending, but the government hasn't given the court any way to tell what interference with the process of justice is going to look like when there isn't even an investigation. How is it easy to determine whether an investigation is in progress? Well, if the police have opened a case file and they're asking questions and they're interviewing potential witnesses and they're trying to figure out whether a crime has been committed, that's an investigation. If the grand jury is going to meet on Monday, there's been an investigation to prep them and get them going. I think that's much easier to than what the government has put forward, which is completely amorphous. I do note that under 1101, it's not just an offense relating to obstruction of justice, but perjury or subordination of perjury. So you're lying on a document would qualify. I believe, yes. That takes care and I think it supports you. That obstruction of justice was being viewed differently. Yes, I think that's perjury or subordination of perjury, which could occur anywhere. That's definitely right. And I think that is another flaw of the government's position is it would subsume not only perjury and robbery of a witness, but also other provisions in 1101-A43, like altering a passport. There are all kinds of other provisions where the government would say you're interfering with the process of justice. And if it were as broad as the government is saying, why did Congress need to specify those other provisions? Mr. Fleming, in our decisions, we've talked a good deal about this reasonable foreseeability concept. So Arthur Anderson and then Marinello in the often. And do we just get rid of that under your way of thinking about these questions? I don't think you need to get rid of it, but it does not apply in this case. I'll note Mr. Gannon, quite surprisingly to me at least, completely disavowed that even though that was part of the BIA's adopted definition in this case based on Marinello. I take it he doesn't quite disavow it. He disavows it at a separate element, but doesn't disavow it as an understanding of what intent is required. Which is very different from what the BIA did. The BIA treated it as part of the actus reus. I think what Marinello and Arthur Anderson were doing, I mean, Arthur Anderson expressly because it was a 1512 case, was talking about what is required, notwithstanding the fact that 1512 says no proceeding is required, the court said, but it still has to be close. And then Marinello picked that up for the provision of the Internal Revenue Code that was at issue there. Neither of them was construing generic obstruction of justice. And our position would be, and has been throughout, I think it's clear, that 1512, whether we call it something that has the gist of obstruction of justice, it is not generic. It is a non-generic obstruction of offense. I think the in the offing idea is meant to deal with the sort of Sunday, Tuesday hypothetical. And that was something that we recognized the law really is not distinguishing between. I think that that may be right. And that's because we're talking about a proceeding specifically under the Ninth Circuit's view. And our view, if you have an investigation, I don't think that comes up. I will say that if the court were to go towards a reasonably foreseeable requirement for the Actus Reus, then we would absolutely need a remand in this case. Because, of course, when we filed our opening brief in the Ninth Circuit, the Ninth Circuit had already said that an ongoing proceeding or investigation is required. So we had no cause to argue whether the California sense in this case required a California prosecutor to prove beyond a reasonable doubt that a proceeding was reasonably foreseeable. I can prove you for the court, it does not. A California prosecutor does not need to prove that at all. And so it would not be a categorical match for the BIA's definition, even were the court to adopt it. We don't think it's justified just because the reasonably foreseeable from Marinello and Arthur Anderson comes out of 1512, which we don't think is a generic version of obstruction of justice. Justice Gorsuch, you said at the beginning that you had two things you hope to get to. And I'm not sure, I think you got to one of them with spit out whatever else you want to say. Thank you very much, Justice Gorsuch. We did talk about relating to a little bit and its definitional role and the sense that the government's approach would render other language in subsection S completely superfluous. I talked about falsely making or altering a passport, which does sound an awful like the process of justice, if it's used as broadly as the government says. Subsection M2, pertaining to tax evasion, that also sounds like something that presumably would hinder the process of justice under the government's view. There's no limiting principle in the government's view for how to exclude that. I'd also say that there's a significant administrability problem with what the government is trying to do here. It would basically include almost everything, including failure to report a crime, failure to assist a police officer. There are all kinds of state law offenses here that the do not sound like aggravated felonies. I think it would require a lot more clarity to think that that's what Congress meant to treat as an aggravated felony. Congress could change this tomorrow. It could add in, it could take the language from 1512 and put it into subparagraph S and say you don't need an ongoing or pending obstruction of justice without need for an ongoing or pending investigation or proceeding. It could do that if it wished to change it. It could get rid of the categorical approach entirely. But when we look at the words that Congress has used, using the generic offense of obstruction of justice as it was understood at the time, I think it's very clear that there was, and remains to this day, a requirement of an ongoing investigation or proceeding. I've talked a little bit about SILA and Charybdis. I believe I answered that. I hope I did anyway with respect to Justice Thomas's question about how we would define the generic offense. Thank you, Your Honor. Justice Kavanaugh? Yeah, I thought we spent the whole argument talking about your two points, but maybe I'm wrong about that. I hope I haven't worn out my welcome, Your Honor. No, it's been very helpful. I just want to make sure I understand what you said to Justice Kagan. Does the generic offense include reasonable foreseeability or not? We don't think so, Your Honor. We argued that... Even the Sunday-Tuesday hypothetical... Oh, that is dealt with by the fact that an investigation is pending during that time. Maybe the grand jury hasn't met, but the prosecutor's office and the police are about to start. The grand jury investigation, but not the investigation of the executive branch. The DA's office is investigating before they convene the grand jury. So when does it start under your approach? What's the bright line start for a typical criminal offense? When a criminal investigator begins inquiring about the commission of an offense. Begins inquiring? I think so. I think if you know the police are... If the offense says you have to that the police are investigating and you intentionally, with specific intent, interfere with the police's investigation... Start when it's reported to the police? I think once it is reported to the... I mean, I suppose if the police immediately say, I'm not interested in that, that's a frivolous or abusive complaint, I'm not going to look into it, then no, there's no investigation. But if the police say, thank you for bringing this to my attention, I'm going to ask about it and start talking to eyewitnesses and figure out whether a crime's been committed, and then someone says, I'm going to interfere with that, and that is an element of the state crime of conviction, then I think that would qualify. Then you started with a couple of what you called trivial... You didn't call them, but seemed trivial offenses that you say shouldn't qualify as aggravated felonies. I thought Congress tried to deal with that originally by having a five-year limit and then changed it to a one-year limit so that it would not capture some of the more kinds of offenses you were describing that shouldn't be called aggravated felonies. Now, there still may be a lot that are, and that might be your response. Okay. Can we talk about the offensive issue in this case, Your Honor? California's offense sweeps very broadly. If you look at page 19A of the petition appendix in Mr. Cordero Garcia's case, the Ninth Circuit block quotes a passage from the California Court of Appeal decision, People v. Wahidi, where they quote the Assembly report that accompanied the legislation, saying it criminalizes attempts to settle misdemeanor violations, certain traffic accidents, et cetera, among the parties without reporting them to the police. Likewise, a person arrested by a civilian, e.g. a shopkeeper, may face criminal charges by trying to talk the shopkeeper into not calling the police. Mr. Wahidi himself didn't threaten anybody. He had gotten into an altercation with someone outside a mosque, and then he went and said, You know, we're both Muslims. We should try to have our families settle this rather than informing the authorities. He didn't threaten the person. He didn't say, I'm going to do anything to you if you call the police. All he wanted to do was settle it. He was convicted. His conviction was affirmed. This is an extremely broad provision. There is no reason to think that Congress meant this to be an aggravated felony obstruction of justice, any more than the fact that some states had broader burglary statutes. California has a very broad witness dissuasion statute. Thank you. Just a quick question. So in figuring out how to draw the line, give me your definition for when an investigation begins. When the authorities are inquiring into or investigating, I guess I can't say investigating, inquiring into the commission of the crime and criminal responsibility for it. What about something like Yates? The officer is going to come and check to see what size the fish are on board. Turns away, they throw the fish overboard that are undersized. I think at that point, the officer is on board and inquiring into whether the fish meet the limit. Whether there has been a crime committed. Yeah. Yes. Investigating whether there has been a crime committed would also qualify. Okay. So as soon as a police officer or some member of the executive branch is asking questions. Yeah, because I think that is a legal process. And Congress could justifiably and has drawn a line saying, once you know that there is a legal process that is ongoing, if you knowingly impede or interfere with that, that is something we want to treat as an aggravated felony. Whereas before that begins, it is quite reasonable. Now, California may well have made a different policy judgment and it's entitled to do that. But when Congress uses obstruction of justice. Okay. I guess that was all I wanted to know as well. Thank you. Justice Jackson. So page 15 of your brief seems to at least acknowledge the relevance of Chapter 73. And I know you're looking at it to find the generic elements of an obstruction of justice offense. But suppose we think that the right inquiry is not to look for a generic obstruction of justice offense, but to ask whether your client had committed one of the offenses listed in Chapter 73 or a state law offense that was a categorical match for one of those offenses. What is your best argument that California's statute, the one under which your client was convicted, is not a match for something like witness tampering in Chapter 73? So this is the issue that divided the majority and the dissent in the Court of Appeals. They didn't actually reach a holding on it because the BIA hadn't considered it. So everyone recognized that the court couldn't deny or petition for review on that basis. But as the majority indicated, 1512 requires a corrupt intent. And as I was discussing in responding to Justice Kavanaugh's last question, California's offense does not require that. And 1512 is the only one you see in here that would be close to what it is? I believe it's the only one that I think was suggested. And again, because this was all dictated in the Court of Appeals, the issue hasn't really been joined. I don't know that the government has suggested that the California offense would match any other provision in Chapter 73. And we don't think it matches any of them for the reasons explained by the panel majority. But that's an issue for remand if, Your Honor, it goes that way. I recognize it was a hypothetical. We don't think the court should go that way. But if it does, the answer is to send it back. Thank you. Thank you, counsel. Thank you, Your Honor. Rebuttal, Mr. Gannon? Just a few quick points. I would say that both of my friends have conceded that there may be an investigation and that it starts at a certain point, and they would concede that that works. But that doesn't concede that any other statutes come in, because under the categorical approach, if they want that to be an element of the offense, that's going to be a vanishingly category, as they've acknowledged today. They've said that only 14 states plus D.C. are the denominator for trying to analyze this, because you only look at obstruction of justice offenses. And we don't think that that gets the categorical approach analysis correct. But I would say we return to what the BIA was saying. And, Justice Kagan, you asked about reasonable foreseeability. That is in the board's definition as part of the mens rea. This is at page 460 of the Valencia-Gallardo III decision, where the board states this, and it specifically says that it's an affirmative and intentional attempt that is motivated by a specific intent to interfere, either in an investigation or proceeding that is ongoing, pending, or reasonably foreseeable. So it's in the part of the definition that it's about a specific intent to interfere with that. That's consistent with what we're talking about in the California offense that Mr. Fleming was just talking about. It comes in because it has the specific intent to influence a potential witness's or victim's testimony or acts. That's quoted in our brief at page 6. And in this instance, it's a serious offense, we know, by Congress's lights, because he was sentenced to a year in prison for each of the two counts. And so here, we think it's clear that the family of offenses and federal law includes not just 1503, but also 1512, and Section 3 accessory after the fact offenses, and Congress did not mean to draw a line between those on the basis of whether there was a pending proceeding, when some of them clearly have it and some of them do not. The court, the case on which the question, on which the court granted cert, is just about whether the entire category of offenses always requires a pending proceeding or investigation, and we submit that it does not. Thank you, counsel. The case is submitted.